**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JEREMY HUNT, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-03969 |
| Plaintiff, | |
| v. | Honorable Franklin U. Valderrama |
| ARCTIC GLACIER U.S.A., INC., | |
| Defendant. | |

**PLAINTIFF'S COMBINED MOTION AND MEMORANDUM OF LAW**
**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
Mara Baltabols
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*dfish@fishlawfirm.com*
*mara@fishlawfirm.com*
*Attorneys for Plaintiff and*
*Others Similarly Situated*

## I.     Introduction

Plaintiff Jeremy Hunt ("Plaintiff") filed this putative class action against Defendant Artic Glacier U.S.A., Inc. ("Defendant") for allegedly unlawfully collecting, using, storing, and his biometric data (*i.e.* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

## II.    Procedural History

On June 21, 2021, Plaintiff filed a Class Action Complaint in the Circuit Court of Cook County, Chancery Division, alleging that Defendant violated BIPA by requiring him and other employees to use a biometric timekeeping system as part of their jobs. (Dkt. No. 1).  In particular, Plaintiff alleged that Defendant violated BIPA by failing to do four things:

1)  Properly inform Plaintiff and Class Members in writing that their biometric information and/or identifiers were being collected;

2)  Properly inform Plaintiff and Class members in writing of the specific purpose and length of time for which their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information was being collected, stored, and used, as required by BIPA;

3)  Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA; nor

4)  Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric identifiers (in the form of their fingerprints and/or handprints) or biometric information, as required by BIPA.

On July 26, 2021, Defendant removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1. On September 1, 2021, Defendant filed a Motion to Dismiss Plaintiff's Class Action Complaint. Dkt. No. 14. On September 1, 2021, Defendant also filed an Unopposed Motion to Stay Proceedings pending rulings in: (1) *McDonald v. Symphony Bronzeville*, (2) *Tims v. Blackhorse Carriers, LLC*, and (3) *Cothron v. White Castle Systems, Inc*. Dkt. No. 16. On October 13, 2021, the Court granted Defendant's Unopposed Motion

2

to Stay Proceedings. Dkt. No. 18. On February 3, 2022, the Supreme Court released an opinion in *McDonald* affirming the judgment of the Appellate Court that the Illinois Workers Compensation Act does not preempt claims under BIPA. 2022 IL 126511, at ¶ 50. On February 2, 2023, the Supreme Court released an opinion *Tims v. Blackhorse Carriers, LLC*, 2023 IL 127801. On February 17, 2023, the Illinois Supreme Court issued an opinion in *Cothron v. White Castle Systems, Inc*., 2023 IL 128004.

On April 17, 2023, the Parties informed the Court that they had reached a class-wide settlement. Dkt. No. 39. On April 18, 2023, the stay was extended for the Parties to complete their settlement discussions. Following the discussions, the Parties were able to come to a mutually agreeable resolution of their claims.

### III.    Summary of Settlement Terms (<u>Exhibit 1</u>, Settlement Agreement)

#### A.    The Proposed Settlement Class (Ex. 1, Settlement Agreement, ¶¶ 4.1(a), 3.3)

The proposed Settlement Class includes a maximum total of 201 identified individuals who worked for Defendant during the class period and who used handscan and/or fingerscan timeclocks in conjunction with their employment.

The Class Representative seeks preliminary approval of a Settlement Class consisting of the following:

> All persons employed by Defendant, who scanned their biometric identifiers or biometric information when utilizing timekeeping technology provided by Defendant while in Illinois at any time from June 21, 2016 through the date of preliminary approval and who did not timely exclude themselves from the Settlement.

#### B.    Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, ¶ 4.1)

While denying all liability and wrongdoing, Defendant has agreed to pay a Gross Settlement Fund of $331,659. ($1,650 per person based upon an estimated total Class Size of 201) to resolve the claims in this case on a class action basis. The Gross Settlement Fund is the

maximum amount Defendant shall be obligated to pay under the Settlement. The "Net Fund" is the Gross Settlement Fund minus the following deductions, approved Class Counsel fees and litigation costs; the Settlement Administrator's costs; and the Class Representative's Service Award. The Net Fund shall be distributed pro rata to Class Members.

After all deductions are made, Class Members are estimated to receive a check in a net amount over $900. Unless they exclude themselves, all Class Members will automatically be sent a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate.

  **C.**  **Uncashed Checks Will Be Distributed to a *Cy Pres* Recipient (Ex. 1, Settlement Agreement, ¶¶ 4.1d, 7.3d)**

Under the terms of the Settlement, the entire Gross Settlement Amount will be distributed and **no portion of it shall revert** to the Defendant. Class Members will have 120 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to Prairie State Legal Services as a *cy pres* recipient.

  **D.**  **Release of Claims (Ex. 1, Settlement Agreement, ¶ 5 )**

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiff's or the Class Members' biometric information while employed at Defendant, including by way of example, any claims arising out of or relating to Defendant's storage, collection, capture, purchase, sale, disclosure, or other handling of biometric identifiers or biometric information. The named Plaintiff agreed to a broader release.

**E.     Settlement Administration (Ex. 1, Settlement Agreement, ¶¶ 2.27, 4.1)**

The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator. The Settlement Administrator's costs are estimated at $9,521. The Settlement allocates $10,000 for Settlement Administration, and any unused amounts will be distributed back to the Settlement Fund.

**F.     Notice of Class Action Settlement (Ex. 1, Settlement Agreement, ¶ 7.2, Ex A)**

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made, exclusion, or how to submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Award; and (6) the Final Approval Hearing details.

**G.     Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 7.2)**

First, the Settlement Administrator will provide the Notice by direct mail. Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address ("NCOS") database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run an advanced search to locate an updated address.

**H.     Service Award (Ex. 1, Settlement Agreement, ¶ 13.5)**

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representative up to $7,500 as a Service Award for his work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, recovering money for the Settlement Class, and for his broad release of claims. Class Counsel will

file the request for the Service Award with their motion for attorney fees and costs.

**I.**     **Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 13.2)**

Under the Settlement Agreement, Class Counsel may request that the Court award them up to 35% of the Gross Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Final Approval Hearing.

**IV.**     **The Court Should Grant Preliminary Approval Settlement of Class Action Litigation is Favored**

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> Preliminary approval of the proposed settlement at an informal hearing; Dissemination of mailed and/or published notice of the settlement to all affected class members; and A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiff requests that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust*

6

*Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

**A.     The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)**

**1.     The Class Representative and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)**

Class Counsel and the Class Representative pursued this case vigorously on behalf of a potential class. *See* Exhibit 3, Baltabols Declaration. As a result of Class Counsel's and the Class Representative's sustained effort, diligent settlement negotiations, substantial experience in BIPA litigation, the Parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

**1.     The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)**

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

**3.     The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)**

This Settlement here exceeds other approved BIPA class settlements. *See, e.g.*, *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring); *Taylor v. Sunrise Assisted Living*, 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.) (BIPA settlement of $400 per person with reversion); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC*, 2018 CH 2140 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc.* 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Dixon v. The Wash. & Jane Smith Home*,

1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) (per member BIPA allocation of between $768 and $1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020)(per member BIPA allocation of $800 per person); *Martinez v. Nando's Restaurant Group, Inc.*, 2019-cv-7012 (N.D. Ill. 2020) (per member BIPA allocation of $1,000).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation. There were several issues that warranted a resolution of this case.

On February 2, 2023, the Illinois Supreme Court decided the *Tims v. Black Horse Carriers, Inc.* 2023 IL 127801, appeal and applied a limitations period of 5 years for every violation of BIPA. The Parties agreed to settlement terms consistent with this limitations period.

Additionally, on February 17, 2023, the Illinois Supreme Court decided the appeal of *Cothron v. White Castle*, No. 128004, which involves the question of accrual of a BIPA claim. The *Cothron* decision found in favor of accrual at the time of each finger scan, not just the first. 2023 IL 128004, ¶ 1. The Illinois Supreme Court found that the statutory language clearly supports recovery for "each violation." *Id.* at ¶ 40.

The *Cothron* Court provided:

> This court has repeatedly recognized the potential for significant damages awards under the Act. *Rosenbach*, 2019 IL 123186, ¶¶ 36-37; *McDonald*, 2022 IL 126511, ¶ 48. This court explained that the legislature intended to subject private entities who fail to follow the statute's requirements to substantial potential liability. *Rosenbach*, 2019 IL 123186, ¶ 36. The purpose in doing so was to give private entities "the strongest possible incentive to conform to the law and prevent problems before they occur." *Id.* ¶ 37.

The Court further noted, "We believe that the plain language of section 15(b) and 15(d) demonstrates *that such violations occur with every scan or transmission*." *Id.* ¶ 30 (emphasis added). Yet, the Illinois Supreme Court recognized that a Court in equity has the discretion to fashion an appropriate damages award under BIPA to deter future misconduct. *Id.* ¶ 42. However, the *Cothron* decision is the subject of a petition for rehearing.

The settlement negotiations took into account both the *Tims* and *Cothron* appeals. The class includes all persons who scanned their fingerprint with Defendant within the last five years, and gross per person amount exceeds the $1,000 per violation award for negligent violations. *See* 740 ILCS 14/20. Plus, the net check amount estimated to be over $900 per person is near to the $1,000 per violation statutory amount. *Id.*

Including this case, Class Counsel has negotiated settlements after *Cothron* in the range of $1,500 gross or more per person. *See Giddeon v. Apple Zebra CFS, LLC d/b/a St. George Logistics, et al.*, 2021 CH 03351 (Cook Cty Cir. Ct.) (104-person class, $1,682.69 per person); *Wilson v. Nascote Industries, Inc. d/b/a Magna Exteriors Belvidere*, Case No. 20 L 39 (Boone County) (1,566-person class, $1,500 per person). With the benefit of *Tims* and *Cothron* (the BIPA appeals deciding recovery per violation over a 5-year limitations period), this Settlement represents an excellent recovery for the Class.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail. Ex. 1, Settlement Agreement, ¶ 7.2. This notice program rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Class Members via check to their last known mailing address.

### c. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of up to 35% of the Gross Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement ¶ 13.2. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Settlement Agreement.

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is <u>Exhibit 1</u> to this Motion. The Named Plaintiff also executed a comprehensive release as part of the class Settlement Agreement. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

### e. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards from the Net Settlement Fund on a *pro rata* basis. Ex. 1, Settlement Agreement, ¶ 4.2. All employees who fall under the class definition will be sent a check to their last known address for their pro rata share of the net amount.

## B. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiff must demonstrate that his claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

### a. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 201, Ex. 1, Settlement Agreement, ¶ 4.1(a), which satisfies numerosity.

### b. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted).

The claims of the Settlement Class Representative and Settlement Class Members arise from the same conduct: Defendant's alleged use of a biometric system for its Illinois employees. Typicality will be met.

### d. Adequacy of the Class Representative

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class

representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

### i. The Class Representative has an interest in the litigation and has no conflict with Class Members.

The Class Representative alleges the same biometric claims as Class Members and has no interests antagonistic to them. Thus, the Class Representative has "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). Plaintiff assisted in any way that he was asked, engaging in many interviews and reviews of information with his attorneys.

### ii. Class Counsel is experienced and qualified.

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Examples of recent BIPA class-wide settlements for Fish Potter Bolaños clients include: *Crumpton v. Octapharma Plasma*, 19-cv-8402 (N.D. Ill) ($9.9 million); *Devose v. Ron's Temporary Help*

*Services, Inc.*, 2019L1022 (Cir. Ct. Will Cty)($5.375 million); *Labarre v. Ceridian HCM, Inc.*,
2019 CH 06489 (Cir. Ct. Cook Cty)($3.49 million); *Johnson v. Resthaven/Providence Life Servs*.,
2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Marsh v. CSL Plasma, Inc.* 19-cv-07606 ($9.9
million); *Philips v. Biolife* Plasma, 2020 CH 5758, (Cir. Ct. Cook Cnty.) ($5.98 million); *Davis v.
Heartland Emp. Servs.,* No. 19-cv-00680, dkt. 130 (N.D. Ill.) ($5.4 million); *Figueroa v. Kronos
Incorporated,* 2019-CV-01306 ($15.2 million); *Martinez v. Nando's Peri Peri*, 2019CV07012
(N.D. Ill. 2020)($1.78 million); *O'Sullivan, et. al. v. WAM Holdings, Inc*., 2019-CH-11575 (Cir.
Ct. Cook Cnty.) ($5.85 million); *Barnes v. Aryzta LLC*, 2017CH11312(Cook Cty. Cir. Ct.)($2.9
million); *Burlinski v. Top Golf USA, No. 19*-cv-*06700*, dkt. 103 (N.D. Ill.) ($2.6 million); *Diller v.
Ryder Integrated Logistics*, 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud
Rests., Inc*., 2019 CH 10620 (Cir. Ct. Cook Cnty.) ($2.1 million).

### 2. Certification Will Be Appropriate Under Rule 23(b).

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common
to the members of the class predominate over any questions affecting only individual members,
and . . . a class action is superior to other available methods for the fair and efficient adjudication
of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### a. Common Questions Predominate.

Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently
cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623
(1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are
capable of proof at trial through evidence that is common to the class rather than individual to the
members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL
4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer

to one basic question: is there an essential common factual link between all class members and the Defendant for which the law provides a remedy? The common question predominating in this case is whether Defendant collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendant's liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### b. A Class Action is a Superior Mechanism.

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . .in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits for recoveries possibly less than $1,000, plus attorneys' fees and costs.

### c. Plaintiff's Notice Program and Class Notice Merit Approval.

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

Distribution of Notices directly to Settlement Class Members by U.S. mail is reasonable.

## III.    Conclusion

Because the Settlement is fair and provides significant monetary relief to the Settlement

Class, the Court should grant preliminary approval and enter the proposed Preliminary Approval

Order, attached as Exhibit 2, which will be submitted to the Court via its proposed order email

address.

Respectfully submitted,

Dated: May 26, 2023                                  /s/ Mara Baltabols
                                                     One of Plaintiff's Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
*Attorneys for Plaintiff and Others Similarly Situated*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on May 26, 2023, which will serve a copy on all counsel of record.

/s/ Mara Baltabols
One of Plaintiff's Attorneys